721 So.2d 829 (1998)
MIAMI SIERRA CLUB and Tropical Audubon Society, Appellants,
v.
STATE of Florida ADMINISTRATION COMMISSION and Miami-Dade County, Appellees.
No. 98-1251.
District Court of Appeal of Florida, Third District.
December 17, 1998.
Richard Grosso, Fort Lauderdale, for appellants.
Robert A. Ginsburg, County Attorney, and John McInnis, Assistant County Attorney, for appellees.
Terrell K. Arline for 1000 Friends of Florida, Inc., as amicus curiae.
Before SCHWARTZ, C.J., and SHEVIN and SORONDO, JJ.
SHEVIN, Judge.
The Miami Sierra Club and the Tropical Audubon Society appeal a final order of the Administration Commission[1] approving a Miami-Dade County Military Base Reuse Plan for the former Homestead Air Force Base ["Base"]. We reverse.
After Hurricane Andrew, the federal government decided to downsize the base. The United States Air Force informed Miami-Dade County that it was considering conveying a portion of the base to the County. In 1994, the County announced its intention to rely on the newly-created military base reuse planning provisions set forth in section 288.975, Florida Statutes (Supp.1996), and to adopt a proposed lease of the base by private parties. In 1996, the County adopted Ordinance 96-144, amending its Comprehensive Development Master Plan to include the *830 reuse plan implementing the lease. Appellants, and several other groups, filed a petition objecting to the plan.
Appellants' objections stemmed from the pervasive effects the proposed development would have on the base's surrounding environment. The reuse plan applies to approximately 2,000 acres of land to be used as a dual civilian (commercial)military airport. The proposed airport is located in close proximity to two national parks and to Biscayne Bay. As noted by the Department of Community Affairs ["DCA"] in reviewing the plan, "[i]n light of the unique and irreplaceable attributes of these water resources, the need to protect Biscayne National Park and Everglades National Park is evident."
The proposed plan would include an 887 acre airfield parcel, a 122 acre terminal parcel, and a 223 acre aviation area for industrial, office, commercial, shopping, and hotel uses. The plan as approved in the final order authorizes 530,000 square feet of development, including a branch bank, Aviation County Public Schools, a homeless shelter, a Vocational Technical School, a Military Commissary, Military Reserve Operations, Air Customs Unit, and a Public Regional Park. The square footage and the acreage of the aforementioned uses is not identified.
After the petitions were filed, the disputed issues were submitted to mediation, as required by statute; this produced no agreement. Mediation was followed by an informal hearing where the DCA issued its recommended solutions. The solutions were not implemented. On December 23, 1997, the Air Force informed the County that no conveyance of the base property would be contemplated until such time as a Supplemental Environmental Impact Statement ["SEIS"] was completed, some eighteen months hence. The SEIS was necessary because the proposed plan was far more expansive than the uses contemplated by the government's first EIS. Less than one month later, on January 15, 1998, despite the Air Force hold on the conveyance, the DCA referred the matter to the Administration Commission for final action. Thereafter, the Administration Commission, notwithstanding the objections by Sierra, Audubon, and other groups, issued a final order approving the County's plan.
The final order cannot stand as it was error for the Administration Commission to approve the plan based on the premature action by Miami-Dade County. The County should not have taken any action, or adopted any plan before the SEIS and the requisite management plans were completed.
Recognizing the unique relationship between the base reuse activities and the activities' impact on local government public facilities and services, and resources and facilities of regional and statewide significance, section 288.975 sets forth "optional provisions for military base reuse planning in recognition of the importance of ensuring prompt and effective planning for the conversion of military bases designated for closure by the Federal Government to maximize the welfare of impacted local governments and their constituents." The legislature expressly provided that the policy of the state is to expedite all state processes related to closure and reuse of the military bases. § 288.972(6), Fla. Stats. (Supp.1996). However, any such expedited action must be "consistent with the state's responsibility to protect the environment, manage growth, and fulfill its proprietary responsibilities." Id. To that end, section 288.975(6)(e.s.) requires that
In the preparation and review of the military base reuse plans, local governments and regional and state agencies shall make every effort to avoid duplicative reviews and to use information and analyses generated by the federal environmental impact statement process and the federal community base reuse plan process.
Furthermore, section 288.976(2) compels state agencies to
[m]ake every effort to avoid duplicate reviews of impacts and, when possible and appropriate, use information analyses, and recommendations generated by the federal environment impact statement process and the community base reuse plan process in state planning and permitting reviews.
In this case, the statutorily mandated procedure was not heeded by the County. Indeed, despite being fully aware that it had *831 not yet acquired the land, and that the federal government had not completed the SEIS prerequisite to approving the conveyance, the County adopted the reuse plan and did not wait for the results of the federal Supplemental Environmental Impact Study. In addition, despite the DCA's recommendation that the Administration Commission "give close thought whether to pursue procedural options for coordinating the state's reuse planning process with the federal SEIS process," consistent with chapter 288 requirements giving precedence to federal studies and analyses, the Administration Commission entered the final order approving the County's plan absent completion of the SEIS.
The federal government deemed it necessary to require a supplemental environmental impact study because of potential or projected increases in commercial flight and passenger operations, commercial use and development, employment, traffic and decreases in military use encompassed by the County's plan. The federal government also noted that the magnitude of the potential noise increase in the area due to the development's impact was sufficient to require a supplemental environmental study. Thus, a SEIS was required prior to conveyance because the project would have a significant impact on the environment not contemplated by the original environmental impact statement. See Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989); National Wildlife Federation v. Marsh, 721 F.2d 767 (11th Cir.1983).
Additionally, the Administration Commission should not have approved the plan because the statutory scheme requires that the plan's "goals and policies be clearly based on appropriate data." § 163.3177(10)(e), Fla. Stat. (Supp.1996); see § 163.3177(8), Fla. Stat. (Supp.1996). However, in this case, the final order stated:
3. No physical development (construction) shall commence until after completion and approval of the following management plans as recommended by the Department of Community Affairs in its Recommended Solutions:
a. Stormwater Management Plan
b. Wildlife/Habitat Management and Mitigation Plan
c. Noise Management and Mitigation Plan;
4. The agencies that will review the foregoing management plans are directed to conduct an expedited review within the following time frames, to commence upon receipt of a complete management plan by the reviewing agency:
a. Stormwater Management Plan90 days by the South Florida Water Management District
b. Wildlife/Habitat Management and Mitigation Plan90 days by the Department of Community Affairs
c. Noise Management and Mitigation Plan120 days by the Department of Community Affairs
5. Standards for review of the Noise Management and Mitigation Plan shall be the standards in legal effect at the time the review is conducted; however, if new standards are subsequently released, such standards and their application shall apply to any future development authorized pursuant to Chapter 163 and 380, F.S.;
6. Miami-Dade County shall not seek Federal Aviation Administration certification for the activities authorized by the Base Reuse Plan until the Noise Management and Mitigation Plan is completed and approved;
7. Miami-Dade County's construction shall be preceded or accompanied by stormwater management measures sufficient to result in a reduction of net discharge of stormwater from the HAFB airport facility;
Thus, the reuse plan was approved despite the absence of Miami-Dade County's compliance with the statutory requirements. As the final order makes clear, the County ignored the data requirement; the management plans concerning storm water, wildlife and its habitats, and noise have not been completed. In view of this deficiency, the order cannot stand.
*832 Finally, we also note that the order is defective in that it does not "consider the nature of the issues in dispute, the compliance of the parties with the statute, the extent of the conflict between the parties, the comparative hardships and the public interest involved." § 288.975(12)(d), Fla. Stat. (Supp.1996). Any future final order must comply with these statutory requirements.
Because of all of these deficiencies, the final order must be reversed. We express no opinion on the issue of whether appellants were entitled to a formal Section 120.57 hearing. This cause is therefore remanded to the Administration Commission with instructions to return it to Miami-Dade County for further consideration and studies consistent with the statutory scheme and this opinion.
Reversed and remanded.
NOTES
[1] The Administration Commission consists of the Governor and the Cabinet of Florida. § 163.3164(1), Fla. Stat. (1997).